

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00086-CV

**IN THE INTEREST OF Y.G.B.**, a Child

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-00166
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  June 4, 2014

AFFIRMED

G.B. appeals the trial court's order terminating his parental rights to his daughter, Y.G.B. The sole issue raised on appeal is a challenge to the sufficiency of the evidence to support the trial court's finding that termination of G.B.'s parental rights was in Y.G.B.'s best interest.  We affirm the trial court's order.

### BACKGROUND

Y.G.B. was born on November 12, 2012.  On November 27, 2012, the Texas Department of Family and Protective Services received a referral for neglectful supervision of Y.G.B. by G.B. and Y.G.B.'s mother, S.S.  On December 31, 2012, the Department received a second referral for neglectful supervision of Y.G.B., alleging that G.B. had: (1) taken Y.G.B. to a party where marijuana and alcohol were present; (2) a history of getting drunk and passing out; and (3) a history

of domestic violence when he drank. The Department began working with G.B. and S.S. on a safety plan on January 4, 2013. On January 16, 2013, G.B. and S.S. broke the safety plan and engaged in a physical altercation in Y.G.B.'s presence while G.B. and S.S. were consuming alcohol. On January 17, 2013, G.B. and S.S. broke the safety plan a second time, and S.S. agreed to voluntarily place Y.G.B. with The Children's Shelter. On January 23, 2013, the Department filed a petition for Y.G.B.'s protection and parental termination because The Children's Shelter could no longer care for Y.G.B.

On January 21, 2014, the case was called for trial. S.S. voluntarily relinquished her parental rights, and the trial court terminated G.B.'s parental rights. G.B. appeals.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.*

"A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## PREDICATE FINDINGS

G.B. does not challenge the sufficiency of the evidence to support the predicate findings, which included findings that G.B. had:

> (1) constructively abandoned [Y.G.B.] who ha[d] been in the permanent or temporary managing conservatorship of the [Department] for not less than six months and: (a) the [Department] ha[d] made reasonable efforts to return [Y.G.B.] to [G.B.]; (b) [G.B.] ha[d] not regularly visited or maintained significant contact with [Y.G.B.]; and (c) [G.B.] ha[d] demonstrated an inability to provide [Y.G.B.] with a safe environment; and

> (2) failed to comply with the provisions of a court order that specifically established the actions necessary for [G.B.] to obtain the return of [Y.G.B.] who ha[d] been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of [her] removal from [G.B.]

## BEST INTEREST FINDING

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody for the child;

(7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Lenore Cisneros Salazar, the Department's caseworker, testified that Y.G.B. is in a foster home with a family willing to adopt her. Salazar testified that G.B. had failed to complete his service plan and that the major concerns were substance abuse and domestic violence. Of the plan's requirements, G.B. had completed a parenting course and participated in a psychological evaluation; however, G.B. had failed to complete individual therapy. Although G.B. had attended one domestic violence session, he was asked to leave because he was not being honest and forthcoming. G.B. also had missed two appointments for his drug and alcohol assessment and provided no verification of his attendance of any NA or AA classes. Although the drug tests G.B. had taken throughout the case were negative, one test was diluted, and G.B. failed to appear at some scheduled tests. While the case was pending, two additional incidents of domestic violence occurred between S.S. and G.B. Although G.B. had consistent visitation with Y.G.B. for a period of time, G.B. had not visited with Y.G.B. in the four months prior to trial. Salazar received information that G.B. had been incarcerated which G.B. denied. Salazar testified that termination was in Y.G.B.'s best interest because no bond existed between Y.G.B. and G.B., G.B. had not been able to provide or show verification of steady housing, and four other children had previously been removed from G.B.'s custody.

G.B. testified that he was not allowed to attend the family violence class because he had no pending criminal charges. G.B. admitted that he had been incarcerated for ten days while the

termination case was pending for a misdemeanor charge of terroristic threats stemming from a 2012 incident. G.B. admitted the charge was a domestic violence crime. G.B.'s incarceration was the result of an arrest warrant issued after he failed to appear at a court date, and a court date was pending with regard to the criminal charge. G.B. stated that he did not inform the family violence class of that charge. G.B. also testified that he had completed the drug and alcohol assessment and had been attending the recommended classes twice a week. G.B. also testified that he was attending NA classes. G.B. stated that he provided the class attendance information to Salazar; however, he did not have any evidence of his attendance to present to the court. G.B. stated that he is employed, and his employer had offered him a house in which to live. G.B. also stated that he was not using drugs. G.B. testified that he left several messages for Salazar about engaging in additional services; however, she never returned his phone calls.

Based on the foregoing evidence, the trial court could have found that G.B. had not engaged in the necessary services to alleviate concerns regarding his substance abuse and domestic violence. In addition, the trial court could have found that G.B. had a pending criminal charge for a domestic violence crime and had engaged in domestic violence on two occasions while the case was pending. Finally, the trial court could have found G.B. had no evidence of a stable home, while Y.G.B.'s foster family was ready to adopt her. Accordingly, the trial court could have formed a firm belief or conviction that it was in Y.G.B.'s best interest that G.B.'s parental rights be terminated.

## CONCLUSION

The order of the trial court is affirmed.

Catherine Stone, Chief Justice